1              IN THE UNITED STATES DISTRICT COURT

2             FOR THE SOUTHERN DISTRICT OF TEXAS

3                       MCALLEN DIVISION

4    UNITED STATES OF AMERICA      §      CASE NO. 7:21-CR-02335
                                   §      MCALLEN, TEXAS
5    VERSUS                        §      MONDAY,
                                   §      JULY 18, 2022
6    CESAR VALLE                   §      4:40 P.M. TO 5:03 P.M.

7                          **<u>SENTENCING</u>**

8              BEFORE THE HONORABLE MICAELA ALVAREZ
                  UNITED STATES DISTRICT JUDGE
9

10

11   APPEARANCES:                        SEE NEXT PAGE

12   ELECTRONIC RECORDING OFFICER:       XAVIER AVALOS

13   CASE MANAGER:                       JULIE ANN SANCHEZ

14

15

16

17

18

19

20                  <u>TRANSCRIPTION SERVICE BY</u>:

21            JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                    935 Eldridge Road, #144
22                  Sugar Land, TX 77478
                       281-277-5325
23              mary@judicialtranscribers.com

24

25       Proceedings recorded by electronic sound recording;
         transcript produced by transcription service.

1                          APPEARANCES:

2

3   FOR THE GOVERNMENT:            LEE ALFRED FRY, ESQUIRE
                                   U.S. Attorney's Office
4                                  1701 W. Hwy 83
                                   Suite 600
5                                  McAllen, TX 78501
                                   956-431-8002
6                                  lee.fry@usdoj.gov

7   FOR THE DEFENDANT:             JOSE ANTONIO SOLIS, ESQUIRE
                                   De La Fuente Solis, PLLC
8                                  PO Box 2307
                                   Edinburg, TX 78540
9                                  956-381-4357
                                   jose@381help.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                INDEX

2                                                          PAGE:

3    COLLOQUY RE:   PRESENTENCE INVESTIGATION REPORT        4

4    VARIANCE ARGUMENT:
       By Mr. Fry                                           5
5      By Mr. Solis                                         5

6    COURT'S FINDINGS                                       18

7    SENTENCE                                               21

8    ADVICE OF RIGHT TO APPEAL                              22

9                                ***

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              **MCALLEN, TEXAS; MONDAY, JULY 18, 2022; 4:40 P.M.**

2              THE COURT:  Next is 21-2335, Cesar Valle.

3              MR. FRY:  Good afternoon, Your Honor.  Lee Fry on

4    behalf of the United States, present and ready.

5              MR. SOLIS:  Good afternoon, Your Honor.  Jose

6    Solis on behalf of Mr. Cesar Valle.  We're present and

7    ready.

8              THE COURT:  Mr. Valle, please raise your right

9    hand to be sworn in.

10                  CESAR VALLE, DEFENDANT, SWORN

11             THE COURT:  Mr. Valle, you are before the Court

12   for sentencing on a charge of making a false statement

13   regarding firearms records.

14             Do you understand that?

15             DEFENDANT VALLE:  Yes, Your Honor.

16             THE COURT:  Mr. Solis, did you receive and review

17   the Presentence Investigation Report?

18             MR. SOLIS:  Yes, Your Honor.

19             THE COURT:  And did you review it with your

20   client?

21             MR. SOLIS:  We did, Your Honor.

22             THE COURT:  And Mr. Valle, did you review with

23   your attorney the Presentence Investigation Report?

24             DEFENDANT VALLE:  Yes, Your Honor.

25             THE COURT:  Now, is there a motion from the

1  Government?

2         MR. FRY:  Yes, Your Honor.  The Government moves

3  for third point pursuant to acceptance of responsibility.

4         THE COURT:  The Court will adopt that

5  recommendation.  The guideline range becomes 87 to a

6  108 months.

7         Do you understand that, Mr. Valle?

8         DEFENDANT VALLE:  Yes, Your Honor.

9         THE COURT:  Okay.  And Mr. Solis, just because

10  I've had this issue come up before, I want to make sure.  I

11  did not see any objection to the Base Offense Level that we

12  started here and that based upon this being a semi-auto

13  firearm capable of accepting a large-capacity magazine.  So

14  I take it that, that is not disputed?

15         MR. SOLIS:  Correct, Judge.

16         THE COURT:  All right.  Thank you.

17         All right.  Now, then, Mr. Solis, you may proceed.

18         MR. SOLIS:  All right.  Thank you, Your Honor.

19         Your Honor, we have an objection to paragraph

20  number 30, which is the number of weapons.  The PSR is

21  adding a plus 4 for the number of weapons indicating that

22  Mr. Valle was responsible for 13.  Judge, respectfully, we

23  would ask this Court to find that only seven of those

24  weapons should be applied to Mr. Valle.

25         As I did indicate in my objections, Judge, four of

1  the weapons that are being counted were purchased by another

2  straw purchaser, Your Honor, on behalf of another

3  individual.  Mr. Valle was not present on that day.  There

4  is no indication he even had knowledge of that purchase.

5          THE COURT:  So --

6          MR. SOLIS:  Additionally, Your Honor --

7          THE COURT:  So let me interrupt.  I sort of agree

8  with that, but what I was having trouble understanding here

9  is when you look at paragraph 15, and in paragraph 15, it

10  says that Mr. Valle admitted that he had purchased six

11  AK-47s, two pistols, and an additional three AK-47s.

12          So if we look just at the AK-47s that would be

13  nine right there.  The pistols, I understand the argument

14  that you're making about the pistols, and we can talk about

15  that in just a moment, but that really doesn't comport with

16  anything in the report here.

17          So does anybody have an explanation for that?

18          MR. FRY:  Your Honor, in this particular case, as

19  the Court has indicated, he did purchase six AKs.  But

20  paragraph 15 refers to his statement as to the forms --

21          THE COURT:  Right.

22          MR. FRY:  -- the documents that have been received

23  from the Government, Your Honor.  We believe the purchases

24  of the AK firearms are better reflected in Table A, Your

25  Honor.  It was actually only five firearms that were of AK

1  caliber that were purchased at the gun show itself, Your --

2           THE COURT:  Uh-huh.

3           MR. FRY:  -- Honor, but the Government does note

4  within paragraph 16 of an additional four firearms were

5  purchased through a gun broker account that was verified.

6  The initial statement was that Mr. Garcia, the unindicted

7  co-conspirator, had used his account to do that.  It

8  seemed --

9           THE COURT:  And used --

10           MR. FRY:  Mr. Valle's account.

11           THE COURT:  -- Mr. Valle's account to do that.

12           Do we know if that was with knowledge of Mr.

13  Valle?

14           MR. FRY:  Well, Your Honor, later, in

15  paragraph 15, it indicates that he, then, admits that he

16  actually purchased those firearms all from gun brokers for

17  Mr. Garcia, Your Honor, because it was via a gun broker, the

18  formal documentation was not received as to, like, an FFL

19  paperwork or a 4473, but we do believe that he did purchase

20  four firearms or had knowledge that Mr. Garcia was

21  purchasing those four firearms on his gun broker account as

22  noted in paragraph 15.

23           THE COURT:  Okay.  All right.  So to come back to

24  paragraph 15 --

25           MR. FRY:  Uh-huh.

1          THE COURT:  -- those, that Mr. Valle himself

2    claims to have purchased three additional ones, you're just

3    not counting anywhere here?

4          MR. FRY:  That's correct, Your Honor, in that --

5          THE COURT:  Uh-huh.

6          MR. FRY:  -- it's from the documentation the

7    Government was able to ascertain, it was at the gun show

8    that he made purchases.  He purchased them from two

9    different FFLs --

10          THE COURT:  Okay.

11          MR. FRY:  -- and it was a total of all the guns

12    contained in Table A.

13          THE COURT:  Okay.

14          MR. FRY:  But if we're only looking at the AK

15    firearms, Your Honor, not the pistols, then there would be

16    seven of them.

17          THE COURT:  Okay.  And -- okay.  So then I do want

18    to move them to the other four.

19          In that regard, Mr. Solis, paragraph 16 does

20    indicate that Mr. Garcia [sic] was involved in that purchase

21    even though he didn't make a personally, but that he was

22    involved, in that, basically, he, you know, working with

23    Mr. Garcia, either allowed or gave him the information for

24    the account to be used, and then Mr. Garcia -- assuming that

25    Mr. Valle was going to receive as compensation for that

1   involvement -- another weapon.

2          So why is that you claim that he shouldn't be held

3   accountable for those?

4          MR. SOLIS:  Judge, again, as we indicated, I don't

5   believe there were -- or to my knowledge -- there were no

6   forms that were filed, which is the basis of the Indictment,

7   Judge.  I don't believe -- and allow the Government to

8   correct me -- I don't believe those guns were recovered.

9          MR. FRY:  They were not.

10          MR. SOLIS:  So there is no indication, Judge, that

11   those guns were even received, or there is no evidence of

12   that, Judge, based only -- they're just basing it off of a

13   statement.

14          THE COURT:  No, no.  There is evidence that they

15   were -- that they were, in fact, purchased is my

16   understanding.  There was evidence that they were purchased

17   -- that they were purchased -- Mr. Garcia using Mr. Valle's

18   account, and that Mr. Valle, in one way or another,

19   assisted, cooperated, with -- that had knowledge that

20   because Mr. Valle was going to receive another firearm for

21   allowing that or helping that happen is what I understand

22   from the report here.

23          MR. SOLIS:  Judge, I would just object to -- like

24   I said -- my objection, Judge, was that the number of

25   weapons, Judge.  I do understand the Court's position, but

1   as I've indicated, Judge, the underlying Indictment was for

2   the ATF Form 4473.

3              THE COURT:  4473.

4              MR. SOLIS:  Judge, and I don't believe that there

5   is enough for those weapons to be counted for the purposes

6   of this enhancement only, Judge.

7              THE COURT:  All right.  So even if I don't count

8   the two firearms that Mr. Valle was going to receive for his

9   self, the Court does believe that he should be held

10  accountable for the ones he purchased, as well as the ones

11  that he, in one manner or another, aided and abetted to be

12  purchased.  So that would put us above the limit.  So -- and

13  the objection is overruled.

14             MR. SOLIS:  Judge, I'm also objecting to paragraph

15  number 31, the enhancement for transferring or otherwise

16  disposing of firearm to another individual whose possession

17  or receipt of a firearm would be unlawful.

18             Judge, and the basis for my objection to that is

19  that, I did go into the application notes of that

20  enhancement itself, and it does define specifically what an

21  unlawful person is, and I will read it to Your Honor --

22  would be that either they have a prior crime of violence,

23  controlled substance offense, misdemeanor crime of domestic

24  violence, or they were at some sort of probation or some

25  sort of supervision, Your Honor.  The only basis that the

1  PSR is using for that enhancement is the fact that this

2  person was a Mexican National.

3        Your Honor, respectfully, although Mexican

4  Nationals, they're not allowed to purchase weapons, Judge,

5  once they're in the country, under certain circumstances,

6  Visa holders, residents, they are allowed to possess

7  weapons, so that the transferring of possession of the

8  weapons, Judge, we believe should not be counted here

9  because there is no other evidence that Andreas Lopez Garcia

10  had any sort of criminal history.

11        Your Honor, he had a Visa, which means that, to

12  have that Visa, there must have been a background check done

13  on him.  So I'm assuming that there was no criminal history

14  for Mr. Andreas Lopez.  So the PSR being silent to anything

15  but the fact that he's a Mexican National, we would object

16  to those plus 4, Your Honor.

17        THE COURT:  And I agree the prohibited person is

18  defined under the guidelines says very specific.  What is

19  the response here?

20        MR. FRY:  Yes, Your Honor.  The Government agrees,

21  in part, to the specific objection here, in that, when we

22  look at the subsection of the guidelines, Your Honor, it

23  indicates that it's either whose possession or receipt of

24  the firearm would be unlawful, which is what the PSR writer

25  relied upon, Your Honor, but we do believe the assessment

1  itself is appropriate because of the second subsection which

2  reads: "It was intended to use or dispose of the firearm

3  unlawfully."

4       We believe the facts contained within the PSR

5  clearly indicate that Mr. Valle knew these firearms were

6  being transferred to Mexico. They even took steps to try to

7  make sure he put a gun straight back to him because that was

8  something that was of concern to him.

9       THE COURT: Uh-huh.

10       MR. FRY: And so we believe that, under that

11  subsection of the guidelines, the plus 4 enhancement;

12  however, the Government does formally note that it was not

13  raised in a Governmental objection, and as it's written

14  within the PSR, the Government agrees that the plus 4 does

15  not apply under A.1 (speakers talk at the same time) --

16       THE COURT: So (indiscernible) a person

17  (indiscernible) --

18       MR. FRY: Correct.

19       THE COURT: Right. And that paragraph -- back to

20  paragraph 15 again, I think, in that paragraph, Mr. Valle

21  admitted that he knew that Mr. Garcia was going to be

22  selling part of the ammunition in -- all together. So the

23  Court does believe, sadly well written, but the Court does

24  believe that the enhancement is warranted in this case. So

25  that objection is overruled as well.

1      MR. SOLIS:  Judge, lastly, we have an objection to

2  paragraph number 32, Judge, and that is an enhancement for

3  he transferred in the firearm or ammunition with knowledge,

4  intent, or reason to believe that it would be transported

5  outside of the United States, Judge.

6      Judge, for the purposes of that enhancement, the

7  PSR uses a conversation.  I believe, it was a -- if I'm not

8  mistaken -- a Facebook conversation, Judge, that was had

9  eight months prior to the date of the offense.  Judge, in

10 that conversation, Andreas Lopez Garcia, who I believe is

11 still at large, Your Honor, he did mention to Mr. Valle, I

12 believe, that there was a potential buyer somewhere in

13 Mexico, Judge.

14     However, I will, like I state to the Court, that

15 conversation, Judge, was had eight months prior.  Mr. Valle

16 did not -- oh, well, I -- to be -- Mr. Valle's response was,

17 "I will look into it."  However, there was no overt action

18 by Mr. Valle, Judge.  It was taken just as a comment that

19 was made by somebody.  It was only until eight months after

20 that this other individual insisted that Mr. Valle ended up

21 where he's at now, Judge.

22     So we feel that a conversation that was had eight

23 months prior, Judge, is not -- is too remote to be counted

24 for the purposes of this enhancement, Judge.

25     THE COURT:  All right.  Now, the conversation

1  eight months prior may be reflected here, and it may say all

2  that you said.  I didn't quite pick that up from here.  So

3  if that's in the report, I missed it.

4       What I did understand from here is that Mr. Valle

5  knew Mr. Garcia, you know, was, in fact, a Mexican citizen,

6  that he did expect that these purchases were going to be

7  transported to Mexico.  I saw the -- and actually, I take it

8  back -- I do see, now, in paragraph 17 that he actually had

9  a note on that.

10       But the other part of it is that he apparently

11  talks about these firearms, like, not being traced back to

12  him and even talks about fictitious bill of sales and then

13  basically saying that he wants to make sure that, you know,

14  that they can't be traced to him; and that if there were in

15  Mexico, they won't be traced to him.  So I think, all of

16  that does indicate knowledge that they were going to be

17  transported, exported, to Mexico.

18       MR. SOLIS:  Judge, and just respectfully, one

19  point of that.  I believe that conversation was held after

20  the day that Mr. Valle participated in this offense, Judge.

21       THE COURT:  I think that is correct, but then,

22  that goes to show the prior knowledge.  So I think it is

23  indicative of that knowledge at the time.  So that objection

24  is overruled as well.

25       MR. SOLIS:  Judge, in light of that, Judge, we

1  respectfully ask for a variance, Judge.  Mr. Valle does have

2  a lot of equities, Judge, that I feel the Court should take

3  into consideration.  First and foremost, Judge, Mr. Valle,

4  this is his first arrest ever.  He doesn't even have a

5  juvenile record.  By all indications, Judge, Mr. Valle is

6  here out of a lapse of judgment.

7          His history, his upbringing, Judge, does not in --

8  is not indicative of where he is today, Judge.  If you look

9  at the background gathering, there is a lot of his families

10  is back here, Judge.  He has a very strong support network.

11  I did include, Your Honor, some pictures for Your Honor to

12  see as well as some letters that I was hoping Your Honor

13  would read from his family.

14          Judge, Mr. Valle did receive his GED from SDC.

15  Before being arrested, he was in the process of trying to

16  complete some sort of formal education because he had just

17  recently been married, Judge.  I did try to get some of

18  those school records, but the fact that he was here, it made

19  it -- some -- difficult from the SDC to get some records.

20          He's been employed ever since he moved to the

21  United States, Judge, as a teenager, 18, 19, years of age.

22  Judge, and I did want to approach Your Honor with some

23  information if possible.

24          THE COURT:  You may.

25      (Begin Bench Conference at 4:55 p.m.)

1          MR. SOLIS:  Hi, Judge.  I'll make it brief, Judge.

2          THE COURT:  That's okay.

3          MR. SOLIS:  Judge, I just wanted to kind of plea

4   (indiscernible) about Mr. Valle when he first learned about

5   the trouble that he was in, Judge.  Initially, when he found

6   out that he was in trouble through this, Judge, he came a

7   hundred percent completely clean with the agents.  He drove

8   them to where the agents had been stashed.

9          THE COURT:  Where the weapons had been stashed.

10         MR. SOLIS:  Where the -- yeah -- the weapons were

11  stashed.  He allowed them to go in, Judge.  He availed

12  himself completely to the agents.  After that, he retained

13  counsel, Judge, that I approached Mr. Fry regarding the

14  possibility of further cooperation, but it was my indication

15  that he had given up everything a hundred percent truthfully

16  right at the beginning.

17         Prior to his sentencing, Judge, I reached out

18  again to see if there was anything else, but again, Judge,

19  because of the original statement there was nothing left.

20  So I just wanted the Court to have any consideration that

21  Mr. Valle from the beginning, Judge.  He has made it a point

22  of wanting to come clean and make right a wrong, Judge.

23         MR. FRY:  And just for (purposes, yes, that's all

24  true.  Judge, frankly, the Government just didn't see a

25  purpose for sitting down with him again in that we didn't

1  believe there was any additional information he could give

2  outside what he gave immediately.  It did lead to an

3  investigation that was just not fruitful based upon the kind

4  of items that were found within the storage locker and

5  (indiscernible).

6           I don't know how to say it with the location other

7  than kind of how (indsicernible) can tell you

8  (indiscernible) in the circumstances.  So the Government

9  would say that he was truthful, and he provided information

10 that was beneficial for the Government, but it didn't rise

11 to substantial assistance.

12          THE COURT:  All right.  Thank you.

13          MR. SOLIS:  Thank you, Judge.  Thank you for your

14 time.

15      (End Bench Ceonference concluded at 4:57 p.m.)

16          THE COURT:  Anything else, Mr. Solis?

17          MR. SOLIS:  Yes, Judge.  A couple more things.

18 Judge, I did also submit some certificates that he completed

19 while in La Villa, Judge.  We're respectfully asking for a

20 sentence substantially below the guideline range, Judge, as

21 we believe that, based on the facts, circumstances, and Mr.

22 Valle, that it would be warranted in this case, Judge.

23          Thank you.

24          THE COURT:  Thank you.

25          Mr. Valle, is there anything that you wish to say?

1          DEFENDANT VALLE:  Yes, Your Honor.

2          I would like to apologize to, Your Honor -- to

3    Your Honor, to this Court, to the United States Government.

4    I also would like to apologize to my family, my wife, my

5    friends here present for all their pain and suffering I've

6    put them through with my selfishness putting them in this

7    situation.  I realize that I made a very big mistake, and I

8    just want to move forward with my life to just close this

9    chapter, go back to work, go back to school, and move

10   forward.

11         THE COURT:  Thank you.

12         Anything from Government?

13         MR. FRY:  Briefly, Your Honor.

14         The Government stated most of its concerns at the

15   bench.  The Government does believe a sentence within the

16   guideline range is appropriate, but more significantly, Your

17   Honor, we will be asking for a period of supervised release

18   just to make sure that, once he is released from custody,

19   that:  One, he can be reentered into society, but also, to

20   make sure that nothing like this doesn't happen again, like,

21   kind of a bad habit (indiscernible).

22         THE COURT:  Thank you.

23         Mr. Valle, the Court does consider all that has

24   been presented here, and you know, there is a lot of talk

25   always, but especially the last few months, about the right

1  to own arms, the gun violence that we have experienced, and

2  the debate about where you balance those two.  Yeah.

3          Your offense occurred before these more recent

4  events, and you have no involvement in them, but I want to

5  touch on them for this reason.  That, you know, we have

6  things like that happen in our communities, and you know,

7  we're all one way or the other impacted.  Sometimes it's

8  just by, you know, sympathy for the people who suffer from

9  it; sometimes, it's more directly.

10          And we look at, you know, what should we be doing

11  different?  How can we change these things?  But one of the

12  things that sometimes sort of causes me pause is that, we do

13  that, but then, we act in ways that may be, either

14  intentionally or sometimes unintentionally, we are

15  furthering some of what we see as tragic events.

16          In your case, you know, you decided to assist in

17  these others in the purchase of these weapons probably

18  giving very little thought to what the ultimate use of these

19  weapons is, and you know, these weapons in Mexico cause all

20  sorts of problems.  I have daily defendants, some of whom

21  may be here today, who are fleeing because of the violence

22  that they experience there.

23          But we have that kind of violence our on end, we

24  -- on our end -- we look at it maybe as a more isolated

25  incident even though they are, I don't think isolated,

1    because they keep reoccurring.  But nonetheless, we sort of

2    look at these as being different situations, and again,

3    Mr. Valle, I have individuals like you who, without really

4    giving thought to, like, down the road, you know, agree to

5    make these purchases and pass these weapons onto others who

6    are certainly not looking at the best interest of their

7    communities when they are taking possession of these

8    weapons.

9            Obviously, in this case, we don't have any

10   specifics as to who ultimately acquired these weapons, but

11   the ones going into Mexico are quite often landing in the

12   hands of the Cartels that make life very difficult for, you

13   know, the, you know, the communities where they operate, and

14   I hope that you do give that some thought, Mr. Valle,

15   because while, you know, in the United States, if you are a

16   law-abiding citizen, you can generally, well, purchase a

17   firearm without any kind of consequences.

18           It's a personal right of that individual, not that

19   you can just purchase them for some other people because

20   those people may have problems that we have determined that

21   even though there is a constitutional right to that, in some

22   instances, certain individuals should not be owning or

23   possessing weapons.

24           In this case, I recognize what Mr. Solis points

25   out, and that is that, you know, this is the first

1   conviction on your record, yet, these are weapons that the

2   Court has a lot of concern about, and this was not just one

3   weapon or two weapons.  I made that determination as to the

4   amount.  The Court does believe that it is a serious

5   offense.

6           In light of what was presented to the Court here

7   at the bench, I will grant a slight downward departure here,

8   but it is just a slight downward departure.  You're in a

9   guideline range of 87 to 108 months.  I will sentence you to

10  a term of 75 months in custody.

11          I am also imposing a three-year term of supervised

12  release.

13          While you are under supervision, you are not to

14  commit another federal, state, or local crime.  You are to

15  comply with the standard conditions adopted by the Court.

16          Additionally, you are not to posses a firearm,

17  ammunition, destructive device, or any other dangerous

18  weapon.

19          You are to cooperate in the collection of a DNA

20  sample.

21          You are also to participate in substance abuse

22  treatment, testing, and abstinence as set out in the

23  appendix to the Presentence Investigation Report.

24          The Court finds you do not have the ability to pay

25  a fine and will waive the fine, but you do have to pay the

1    $100 special assessment.

2              Anything else as to Mr. Valle?

3              MR. FRY:  Yes, Your Honor.  The Government moves

4    to dismiss Count 2.

5              THE COURT:  It will be dismissed.  Thank you.

6              MR. SOLIS:  Thank you, Judge.

7              THE COURT:  Then you may be excused.

8              UNIDENTIFIED SPEAKER:  Right to appeal.

9              THE COURT:  I'm sorry?

10             UNIDENTIFIED SPEAKER:  The appeal.

11             THE COURT:  Oh, I'm sorry.  I'm sorry.  Mr. Valle

12   -- than you -- thank you.  I'm happy to advise you of your

13   right to appeal.  Thank you.

14             Mr. Valle, if you would return, please.  I need to

15   advise you of your right to appeal.

16             You do have the right to appeal.  If you wish to

17   appeal, you need to advise your attorney.  If you cannot

18   afford an appeal, you may file for *in forma pauperis* in

19   which case, the Court will file your Notice of Appeal, and

20   the Court will appoint appellate counsel, and that appeal

21   has to be filed within 14 days of the judgment being

22   entered.

23             Anything else, then?

24             MR. SOLIS:  Thank you.

25             THE COURT:  All right.  Thank you.  Then, you may

1   be excused.  Thank you.

2           MR. FRY:  May I be excused, Your Honor?

3           THE COURT:  Yes.

4       (Proceedings adjourned at 5:03 p.m.)

5                    * * * * *

6           *I certify that the foregoing is a correct*

7   *transcript to the best of my ability produced from the*

8   *electronic sound recording of the proceedings in the above-*

9   *entitled matter.*

10  */S/ MARY D. HENRY*

11  *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

12  *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

13  *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

14  *JTT TRANSCRIPT #66193*

15  *DATE FILED:  SEPTEMBER 20, 2022*

16

17

18

19

20

21

22

23

24

25